UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 16-64-HRW

CAMOFI MASTER LDC
and CAMHZN MASTER LDC,                                           APPELLANTS,

v.                       **MEMORANDUM OPINION AND ORDER**

PHAEDRA SPRADLIN,
 as Chapter 7 Trustee
and EAST COAST MINER LLC,                                         APPELLEES.


This matter is before the Court upon CAMOFI Master LDC and CAMHZN Master LDC ("CAM Funds") Appeal from Bankruptcy Court, Judge Tracey Wise's Order sustaining the Trustee's Motion to Dismiss CAM's Complaint [Docket No. 1-1]. This matter has been fully briefed by the parties. The Court, having reviewed the record and being otherwise sufficiently advised, hereby affirms the decision of the Bankruptcy Court.

**I.**

This cases arises from a lawsuit filed by CAM Funds in the New York Supreme Court against U.S. Coal, J.A.D. Coal Company, East Coast Miner ("ECM"), and two of ECM's members, Keith Goggin and Michael Goodwin.[1] [Docket No. 7-2]. In its original Complaint, CAM asserted claims against U.S. Coal and J.A.D. Coal for breach of contract, against U.S. Coal's officers for breach of fiduciary duty and against U.S. Coal's officers and ECM for tortious

---

[1] Several other corporations and individuals were named as Defendants in that lawsuit, but are irrelevant to the instant appeal.

interference with contractual relations.[2] ECM sought dismissal of the Complaint. The NEW York Court dismissed the claims against the individual Defendants but allowed the other claims to proceed, ordering CAM to file an Amended Complaint reflecting its ruling.

That Complaint is the pleading at issue in this appeal and concerns three agreements entered into among the CAM Funds, U.S. Coal and/or J.A.D.: (I) an April 2008 letter agreement whereby U.S. Coal granted the CAM Funds certain consent rights with respect to the management of U.S. Coal, including borrowing money, hiring or firing officers, or entering in affiliate transactions ("Management Agreement"[3]); (ii) an agreement requiring U.S. Coal to repurchase its stock from the CAM Funds if U.S. Coal failed to meet certain conditions ("Put Agreement"[4]); and (iii) an equipment note executed by U.S. Coal and J.A.D. in the amount of

---

[2] The CAM Funds hold equity and debt in U.S. Coal, a Delaware corporation, and its wholly-owned major-operating subsidiary J.A.D. Coal, a Virginia corporation, who are in the coal business. ECM, a Delaware limited liability company, is an investment vehicle that owns debt in U.S. Coal and its subsidiaries that is subordinate to the debt held by the two CAM Funds. In 2009, directors, officers, and shareholders of U.S. Coal formed ECM. ECM was interested in recapitalizing U.S. Coal by purchasing a significant amount of its debt—at a discount—and investing in its equity. The CAM Funds consented to those recapitalization transactions. After the recapitalization transactions, all of U.S. Coal's directors were ECM members. [Docket No. 1-1, p. 2 citing United States Bankruptcy Court for Southern District of New York's Memorandum Decision, p. 2-3].

[3] The "Management Agreement" purports to grant the CAM Funmds management rights over U.S. Coal wherein U.S. Coal agreed to obtain the CAM Funds' consent before, among other things: (1) incurring, creating or assuming certain debts; (2) hiring or terminating executive officers with a salary in excess of $100,000; (3) making expenditures for fixed or capital assets over $5,000,000; (4) entering into transactions with affiliates valued at more than $500,000; and (5) declaring bankruptcy, dissolving or liquidating. [Docket Nos. 7-27-28].

[4] The "Put Agreement" arises from the CAM Funds' purchase of a $4,250,000 note from J.A.D. Pursuant to that transaction, CAM received 425,000 shares of U.S. Coal's common stock. At the same time, U.S. Coal and CAM entered into the "Put Agreement" under which CAM alleges to have the right to "put" the 425,000 common shares back to U.S. Coal, forcing it to buy back these shares for $5.40 per share, if certain "trigger events" did not occur. [Docket

2

$4.8 million to be paid to the CAM Funds ("Equipment Note"[5]). [Docket No. 7-26].

In the summer of 2014, creditors filed involuntary bankruptcy petitions against U.S. Coal, J.A.D. Coal and several of their affiliates ("Debtors"). The cases were jointly administered and proceeded under Chapter 11 but were eventually converted to Chapter 7.

Prior to conversion, the Official Committee of Unsecured Creditors investigated the Debtors' prepetition transactions and on March 24, 2015, filed a an adversary proceeding against ECM, Goggin, Goodwin, and ECM's affiliate, East Coast Miner II ,("Trustee Complaint"). [Docket No. 7-22]. After conversion, the Trustee was substituted as the plaintiff therein.

The Trustee's Complaint asserts claims against ECM, its principals, Goggin and Goodwin, and ECM II. These claims include fraudulent transfer claims against ECM based upon the Bankruptcy Code and state law pursuant to 11 U.S.C. §§ 544(b), 548(a)(1)(B), 550(a) and 551 and Kentucky Revised Statutes § 378.020. In addition, breach of fiduciary duty claims were asserted against Goggin and Goodwin. The Trustee contends that Goggin and Goodwin orchestrated events so that all of U.S. Coal's board members had an equity interest, directly or indirectly, in ECM. With ECM investors in control of U.S. Coal's board, the Trustee asserts that ECM's interests were placed above those of U.S. Coal, its affiliated debtors, and their creditors in that (I) obligations to ECM were paid ahead of and to the detriment of other creditors; (ii)

---

Nos. 7-27-28].

[5] The CAM Funds assert that ECM, through its members, intentionally caused JAD to default on the Equipment Note by directing that JAD not make payments required under the Equipment Note while the Debtors continued to make payments on indebtedness owed to ECM. In directing that payments be withheld on the Equipment Note, the CAM Funds assert that ECM, through its members, intentionally caused JAD to breach the Equipment Note and that ECM's members abused their authority and violated their duties to U.S. Coal.

ECM charged excessive interest, default interest and fees to the Debtors; (iii) U.S. Coal's funds were inappropriately used to pay ECM's attorneys' fees, costs and expenses of organization and litigation brought by third parties; and (iv) ECM refused to agree to a standard subordination agreement to which it had routinely agreed resulting in reduction of Debtors' cash flow and increasing payables to the detriment of the Debtors and their creditors. The Trustee further asserted that Goggin and Goodwin threatened Robert Gabbard, U.S. Coal's then Chief Executive Officer, to resign with a $1.2 million severance package rather than have his employment terminated. As a result, the Trustee asserts, U.S. Coal incurred an unnecessary expense of $1.2 million; i.e., had he been terminated for cause, Mr. Gabbard would not have been entitled to severance pay. In its prayer for relief, the Trustee seeks to avoid allegedly fraudulent transfers, subordinate and/or avoid liens and preserve them for the benefit of the bankruptcy estates, and to disallow claims. With regard to is claims against Goodwin and Goggin for breach of fiduciary duty, the Trustee seeks compensatory, exemplary and/or punitive damages on behalf of the estates and their creditors.

The adversary proceeding was ultimately transferred to the United States Bankruptcy Court for the Eastern District of Kentucky. [Docket No. 7-19].

The Trustee filed the Motion to Dismiss the CAM Complaint contending the claims asserted by the CAM Funds belong exclusively to the Trustee. Although the CAM Funds conceded that only the Trustee may pursue breach of fiduciary duty and fraudulent conveyance claims, they argued that their claims against ECM for tortious interference are personal claims for injuries specific to them, and, as such, are not subject to dismissal.

United States Bankruptcy Court Judge Tracey Wise disagreed with the CAM Funds. Applying the factors set forth in *Honigman v. Comerica Bank (In re Van Dresser Corp.)*, 128 F.3d 945, 947 (6th Cir. 1997), Judge Wise determined that the CAF Funds' claim for tortious interference against ECM belong exclusively to the Trustee on behalf of the Debtors. Accordingly, she sustained the Trustee's Motion to Dismiss. [Docket No; 1-1].

The CAM Funds ask this Court to reverse the decision of the Bankruptcy Court. Specifically, they present the following issues on appeal:

1. Did the Bankruptcy Court err in finding that a trustee appointed under Chapter 7 of the Bankruptcy Code has the exclusive right to bring a creditor's state law claims for tortious interference with contract against a non-debtor third party?

2. Did the Bankruptcy Court err by stripping the CAM Funds of their standing to bring tortious interference claims against a non-debtor that they had litigated for two years pre-petition on the grounds that their claims would "interfere" with the right of the Trustee to bring claims for breach of fiduciary duty or avoidance?

3. Did the Bankruptcy Court err in finding that the injury suffered by the CAM Funds as a result of tortious interference was "common" with, and not independent from, the injuries allegedly suffered by the Debtors as a result of breaches of fiduciary duty and avoidable preference payments?

4. Did the Bankruptcy Court err in its analysis of the relief sought by, and remedies available to, the CAM Funds and the Trustee?

[Appellants' Brief, Docket No. 6, p. 1-2].

## II.

"The standard of review on appeal is determined by the nature of the action taken below by the bankruptcy court." *In re Telex Corp.*, 984 F.2d 170, 172 (6th Cir. 1993); *see also In re Dow Corning, Corp.*, 456 F.3d 668, 674-75 (6th Cir. 2006). Where a bankruptcy court decides a question of law, the decision is subject to de novo review. Dow Corning, Corp., 456 F.3d 668,

5

674-75. Where a bankruptcy court "applies" the Bankruptcy Code, its determinations are also subject to de novo review. *Id.* Where a bankruptcy court interprets its own prior orders and acts, it is subject only to review for a clear abuse of discretion." *In re Special Metals Corp.*, 360 B.R. 244, 247 (E.D. Ky. 2006)( citing *Enodis Corp. v. Employers Ins. Of Wausau (In re Consolidated Industries Corp.)*, 360 F.3d 712, 716 (7th Cir. 2004).

In this case, the parties agree that this Court should review this matter *de novo*. "De novo review requires the [Court] to review questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998).

### III.

Appellants' statement of issue on appeal are essentially whether the Bankruptcy Court correctly determined under controlling and applicable bankruptcy law that the CAM Funds' "tortious interference" claims against East Coast Miner LLC ("ECM") belong exclusively to the Trustee on behalf of the Debtors' estates because such claims: (1) share the same underlying focus as the Trustee's claims against ECM; (2) assert injuries that are the same as those suffered by U.S. Coal itself and other creditors; (3) create the possibility of duplicate recoveries for the CAM Funds; and (4) if allowed to proceed, would interfere with the Trustee's litigation of her claims against ECM.

The trustee in bankruptcy acts as the representative of the estate. It is the trustee who "has the capacity to sue and be sued." 11 U.S.C. § 323(b). The right to purse causes of action formerly belonging to the debtor is regarded as a form of property and vests in the trustee. *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988). A trustee has the exclusive right to

bring causes of action created by the Bankruptcy Code, including avoidance actions set forth in chapter 5 of the Code for fraudulent conveyance, preference and lien avoidance, for example. *See* 11 U.S.C. §§ 541(a)(4), 541(a)(6), 544, 548, 550 & 551. Providing broad and exclusive standing to a trustee promotes the Bankruptcy Code's core policy objectives "to promote the orderly resolution of all claims and prevent creditors from racing to the courthouse to achieve preferential treatment." *Sec. Inv'r. Prot. Corp. v. Bernard L. Madoff Inv. Sec. L.L.C.*, 429 B.R. 423, 430 (Bankr. S.D.N.Y. 2010), *aff'd*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012), *aff'd*, 740 F.3d 81 (2d Cir. 2014). In other words:

> The bankruptcy trustee's role is to manage the estate and gather up all available property, including causes of action, for an eventual pro rata, monetary distribution among the debtor's creditors. In addition to representing the rights of the debtor, the trustee represents the interests of the debtor's creditors. . . . "The trustee's single effort eliminates the many wasteful and competitive suits of individual creditors."

*Lincoln Electric Co. v. Manahan*, 2011 WL 3516201, *4 (N.D. Ohio Aug. 11, 2011)(internal citations omitted).

While the idea of the Trustee as the sole captain of the ship seems axiomatic, the principle is difficult to apply in certain cases, such as the instant matter. Tortious interference claims are vexing in the context of bankruptcy. Fortunately, the Sixth Circuit has provided cogent guidance in this regard. In *Van Dresser*, Honigman, a shareholder and creditor of the debtor corporation, Van Dresser, brought suit against Comerica Bank, the debtor's bank; Brown, a bank officer; and Friley, the president of the debtor's parent corporation. *Van Dresser*, 128 F.3d at 946. The complaint alleged that Friley, with the aid of the bank, bilked the parent corporation

out of more than $2.7 million, causing it and its subsidiaries to file bankruptcy and resulting in Honigman being called on his guarantee of Van Dresser's indebtedness. *Id.* The trustees of two of the bankrupt corporations, however, had previously recovered $200,000 of the loss from Comerica pursuant to a court-approved settlement and were currently proceeding against Friley and Brown. *Id.* at 947.The defendants in Honigman's action successfully removed it to the bankruptcy court presiding over Van Dresser's bankruptcy case, and thereafter moved to dismiss the action based on the theory that it was derivative of harm to Van Dresser and therefore belonged to its estate. *Id.*

In determining the proper ownership of Honigman's claims, the Sixth Circuit instructed that "if the debtor could have raised a state claim at the commencement of the bankruptcy case, then that claim is the exclusive property of the bankruptcy estate and cannot be asserted by a creditor." *Id.* If, however, the "cause of action does not explicitly or implicitly allege harm to the debtor," then it "could not have been asserted by the debtor at the commencement of the case, and thus is not property of the estate.

While the Sixth Circuit acknowledged that both Honigman and Van Dresser stated actionable claims under Michigan law, but ruled that since the loss sought to be recovered was common to both of the corporations, and Honigman and could not be the subject of a duplicative recovery, the claims of the debtor corporations precluded Honigman's suit.[6] *Id.* at 948.

---

[6] Further elucidating the holding in *Van Dresser*, are cases where courts have permitted tortious interference claim to coexist, for lack of better term, because the debtor's claim has a factual basis other than the nonpayment pf debt. *See e.g., Andrew Greenberg, Inc. v. Svane, Inc.*, 830 N.Y.S.2d 358 (N.Y. App. Div. 2007) (inducing debtor to disclose plaintiff's confidential trade secrets); *Roach v. Reldan Trading Corp.*, 321 F.2d 42 (2d Cir. 1963) (malicious interference with contract by fraudulently obtaining plaintiff's consent to sale of controlling

8

The Bankruptcy Court succinctly stated the *Van Dresser* factors:

> 1. "[I]f the debtor could have raised a state claim at the commencement of the case, then that claim is the exclusive property of bankruptcy estate and cannot be asserted by a creditor."
> 2. "Conversely, if the cause of action does not explicitly or *implicitly* allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of case, and thus is not property of the estate."
> 3. Finally, if under the facts alleged in the creditor's complaint, both the debtor and the creditor could assert state law claims for damages against the same defendants, "[t]he only question is whether *both* [creditor] and [debtor] could *recover* on their claims." If a judgment against the defendants by either the creditor or debtor in state court would preclude the other from a subsequent recovery, "then the claims are not truly independent, and by default the claims are exclusively property of the trustees in bankruptcy."

[Docket No. 1-1, p 11](internal citations omitted).

Applying these factors to the CAM Funds' Amended Complaint, it is clear that they lack standing to sue ECM individually.

First, the CAM Funds would be hard pressed to dispute that that their Amended Complaint and the ECM Complaint have the same "underlying focus" – that ECM favored itself and caused U.S. Coal's directors to breach their fiduciary duties to U.S. Coal, thereby causing injury to U.S. Coal and its creditors, including, not only the CAM Funds but also, as they admit, "other lenders." [Docket No. 7-26, ¶ 51]. Specifically, it alleges, (a) the ECM funds paid themselves when others did not get paid; (b) ECM caused U.S. Coal to give Gabbard severance; ( c)ECM caused U.S. Coal to incur additional interest payments to ECM; (d) ECM caused U.S.

---

interest in debtor); *Eagle Enters.*,265 B.R. 671 (inducing debtor to terminate a contract upon which plaintiff relied in leasing equipment to debtor; but remanding for determination of whether claims should be enjoined because they could interfere with orderly resolution of bankruptcy proceedings).

9

Coal to incur additional interest payments due to the ECM II transaction : (e) ECM caused U.S. Coal to incur additional interest payments to Goggin and Goodwin on their individual notes; and (f) the ECM Parties breached their fiduciary duties to U.S. Coal. *Id. at* ¶¶ 40, 43, 47, 50, 74, 84.

Likewise, in its Complaint, the Trustee alleges that (a) ECM caused itself to be paid when other lenders were not; (b) the ECM Parties breached their fiduciary duties to U.S. Coal by favoring their interests over those of other creditors; and ( c) the ECM Parties obtained improper and avoidable liens and claims and engaged in misconduct that should cause their claims to be equitably subordinated arising from the ECM-JMB Transaction, the 2011 Transaction, the extension of Goggin and Goodwin's personal notes and other transactions. [Docket No. 7-22, ¶¶54, 57, 79-100].

A side-by-side comparison of the allegations of the CAM Funds and the Trustee clearly shows that the two lawsuits share a gravamen. To be sure, there exists substantial overlap in what is alleged in the competing complaints.

Further, if the CAM Funds were permitted to proceed against ECM, the potential for a double recover is undeniable.

Allowing the CAM Funds to proceed with individual claims against ECM thus would be contrary to the equitable distribution scheme mandated by the Bankruptcy Code. A bankruptcy, in its simplest terms, reduces a creditor's property to a single asset, of which the Trustee is the sole representative authorized to marshal and distribute from the "pot", *pro rata*, among those with allowed claims. Were the CAM Funds to recover once from the Debtors' estates, for example, on their claims regarding the Gabbard severance or the non-payment of the Put Agreement, and a second time from ECM for these same events, they unquestionably would be

10

given preferential treatment relative to other creditors.

Moreover, any alleged injury suffered by the CAM Funds due to ECM's actions is no different from the injuries suffered by all other creditors of the Debtors. The CAM Funds cannot overcome the dispositive fact that the injury they allegedly suffered because of ECM's conduct is that their debts were not paid by U.S. Coal. This is the same injury that every other creditor suffered because ECM favored itself, caused itself to be paid when others were not, and otherwise led U.S. Coal to make decisions which drained revenue and harmed the company.

Finally, a separate lawsuit by the CAM Funds would impermissibly interfere with the Trustee's claim against ECM. Indeed, in their opposition to the Trustee's Motion to Dismiss, the CAM Funds candidly admitted that if they are permitted to pursue a separate action on their own behalf, they are "competing" with the Trustee for the same pool of recovery. [Docket No. 7-41].

The CAM Funds maintain that the fact that they brought their tortious interference claim prior to the bankruptcy belies the Trustee's exclusive standing. However, even where an individual creditor may have had a cause of action prior to bankruptcy, that does not mean that it may continue to pursue that action individually *after* bankruptcy and the appointment of a trustee. After a bankruptcy trustee is appointed, only the trustee may bring claims where the debtor has an interest or that are common to creditors as a whole. The existence of a pre-petition lawsuit is not dispositive of whether that claim belongs to the estate. If the timeline of who-filed-what-when were to dictate, the notion of equitable distribution which is at the very core of Bankruptcy would be turned upside down. *See, e.g., In re Barkany*, 542 B.R. 662, 690 (E.D.N.Y. 2015) (dismissing individual creditors' prepetition lawsuit for conversion, fraudulent transfer, unjust enrichment, and aiding and abetting Ponzi-related schemes perpetrated by the debtor

because the injury suffered by the creditors was "generalized to all or most of the creditors of the bankruptcy estate"); *In re Cabrini Med. Ctr.*, 489 B.R. 7, 22 (S.D.N.Y. 2012) ("[w]hat is relevant is that the kind of harm alleged by the State Court complaint was no different from the harm suffered by the unsecured creditors of Cabrini generally. . . . Once the [bankruptcy] petition was filed, all such claims became property of the estate."); *In re Mortgage America Corp.*, 714 F.2d 1266, 1276-77 (5th Cir. 1983) (holding that a creditor's prepetition claim accusing defendants of "denuding the corporation" was automatically stayed by an intervening chapter 7 filing and passed to the Chapter 7 trustee, who was then charged with prosecuting it for the benefit of all creditors and shareholders); *Delgado Oil Co. v. Torres*, 785 F.2d 857, 861-62 (10th Cir. 1986) (nullifying a judgment that an individual creditor obtained post-petition on a lawsuit that had contended that corporate directors breached their fiduciary duties because, following bankruptcy, the claim belonged to the bankruptcy trustee).

The CAM Funds also contend that because their claim is for "tortious interference, its outside of the Trustee's exclusive domain. Yet, as stated *supra*, what matters is the nature of the wrong alleged in the complaint and not the plaintiff's designation or characterization of that wrong. *See, e.g., In re Swallen's*, 205 B.R. 879, 883 (S.D. Ohio 1997) and *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 437 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994)(concluding that preferred shareholders' tortious interference with contract claim, which was based on acts rendering Eastern insolvent and unable to pay its contractual debts to the preferred shareholders, "is for fraudulent conveyance properly brought by the Trustee, not for tortious interference of contract"); *In re Kevco, Inc.*, 309 B.R. 458, 466 (Bankr. N.D. Tex. 2004) (tortious interference and other fraud-based claims dismissed as seeking same damages as trustee's action).

Where, as in this case, the claims of the CAM Funds and the Trustee have the same underlying focus, it wold be inappropriate to allow the CAM Funds to "artfully plead" their way out of bankruptcy court. *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439, 442 (4th Cir. 1999).

Based upon the foregoing, the Court finds that the Trustee has the exclusive right to pursue the claims alleged in the CAM Funds' Complaint. Therefore, the Complaint must be dismissed.

### IV.

Accordingly, for the reasons stated above, the Court hereby AFFIRMS the Bankruptcy Court. A separate judgment shall issue this day in conformity with the Court's Memorandum Opinion.

This 6th day of October, 2017.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge